IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DELICIA T. WILLIAMSON,  :
                                                 :
    Plaintiff,                            :
                                                 :          CIVIL ACTION NO.
    v.                                         :          1:11-CV-1161-AT
                                                 :
BANK OF AMERICA, N.A,             :
                                                 :
    Defendant.                          :
                                                 :

## ORDER

    This is a foreclosure case.  Borrower/Plaintiff Delicia T. Williamson brought this case on a *pro se* basis against Lender/Defendant Bank of America, N.A. ("BANA") after she fell behind in her mortgage payments and BANA threatened to foreclose.  Williamson alleged, among other things, that BANA was not the holder of the promissory note or security deed and thus had no authority to foreclose.  She also argued that BANA acted unfairly in its handling of her loan modification, which led to what BANA now claims to be a default on her loan. Williamson sued for wrongful attempted foreclosure and for an injunction to prohibit BANA from foreclosing on her property.  This matter is now before the Court on the parties' cross-motions for summary judgment.  [Docs. 35 and 42].

## I.  PROCEDURAL HISTORY

On March 11, 2011, Williamson filed suit in the Superior Court of Clayton County, Georgia, asserting claims against BANA for breach of contract, breach of statutory duty, wrongful foreclosure, and other claims related to BANA's failure to modify Williamson's home mortgage loan.[1]  (Compl., Doc. 1-1.)  On April 11, 2011, Defendant removed the action to the District Court of the Northern District of Georgia (Not. Removal, Doc. 1) and promptly filed a motion to dismiss (Def. Mot. Dismiss, Doc. 3).  The Court granted in part and denied in part BANA's motion, dismissing all claims against BANA except Williamson's claim for wrongful attempted foreclosure and for injunctive relief.  (Doc. 9.)

The parties' attempt to settle this matter failed, and on October 26, 2011, BANA answered the Complaint.  (Answer, Doc. 17.)  Pursuant to Federal Rule of Civil Procedure 56(b) and this Court's Scheduling Order (Doc. 27), all motions for summary judgment were due 30 days after March 26, 2012, the closing date for discovery.  Fed. R. Civ. P. 56(b).  BANA timely filed its motion for summary judgment on April 24, 2012.  (Def. Mot. Summ. J., Doc. 35.)

On May 15, 2012, Williamson requested an extension of time to respond to BANA's motion, and the Court granted this extension, giving Williamson until

---

[1] The Clayton County suit was filed as Case No. 2011-CV-00920-9. Williamson also filed a Motion for Temporary Restraining Order in Clayton County Superior Court.  Superior Court Judge Geronda Carter entered an Order on April 1, 2011 enjoining BANA from foreclosing, which expired on May 1, 2011.  (*See* Doc. 9 at 2.)  Williamson did not file a subsequent motion for preliminary injunction.  (*Id.* at 2-3.)

June 29, 2012.  However, Williamson did not request an extension to file her own summary judgment motion.   Then, three months past the deadline to file summary judgment motions, Williamson filed a motion for summary judgment. (Doc. 39.)

The Court may disregard an untimely motion for summary judgment, particularly if filed months past the deadline.  However, considering Williamson's *pro se* status and the lack of prejudice to Defendant, the Court will construe Williamson's motion for summary judgment as timely filed.   Accordingly, presently before the Court are the parties' cross-motions for summary judgment. (Docs. 35 and 42.)

## II.   Legal STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law.   *Id.*  The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party.  *Id.* at 249.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. *Id.* at 324-26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the

court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984).   Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts.  *Id.* at 1555-56.

### III.   BACKGROUND[2]

Plaintiff has two remaining claims against BANA: (1) wrongful attempted foreclosure and (2) injunctive relief to prevent a wrongful foreclosure.   Her wrongful attempted foreclosure claim arises out of allegations that BANA acted unfairly in the handling of her loan modification, resulting in a default that never should have happened.   She argues that BANA then published a foreclosure notice stating that she was in default on her Note.   As a result, Plaintiff alleges that the value of her property plummeted.   Likewise, Plaintiff's request for injunctive relief arises out of BANA's alleged improper handling of her loan

---

[2] The Court provides the following factual background for context purposes only.   This statement does not represent actual findings of fact.  *In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).   Williamson filed a cross-motion for summary judgment that tracks her arguments asserted in response to BANA's motion for summary judgment.   As the Court ultimately finds in BANA's favor, the Court will view the evidence and all factual inferences in the light most favorable to Williamson.  *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.2d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, court must review all facts and inferences in light most favorable to non-moving party).

modification, but she also argues that BANA does not currently own the Security Deed or the Note and thus has no authority to foreclose.

Considering these arguments and the parties' cross-motions, the facts surrounding two issues are most important: (1) BANA's ownership of the Security Deed and the Note; and (2) BANA's and Plaintiff's conduct regarding Plaintiff's alleged default.

## A.    BANA's Status as Secured Creditor

On September 29, 1998, Plaintiff executed a promissory note ("Note") in exchange for $112,950 from Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender ("CHL") to purchase real property located at 12032 Red Ivy Lane, Fayetteville, Georgia ("Property").  (Def. Statement of Undisputed Facts, Doc. 35-1 ("DSUF") ¶¶ 1-2; Def. Mot. Summ. J. Ex. B, Doc. 35-3 ("Note"); Williamson Dep. 10:17-11:19.[3])  The loan was secured by a deed ("Security Deed") granting CHL a security interest in the Property.  (Def. Mot. Summ. J. Ex. C, Doc. 35-4 ("Security Deed"); DSUF ¶ 2.)

### 1.    *The Note*

On September 30, 1998, the day after execution, CHL's Assistant Secretary Nora Yoro assigned the Note in "BLANK" and physically delivered the Note to Countrywide Home Loan Servicing, L.P. ("CHL Servicing").  (Fishman Aff. ¶¶ 6-

---

[3] Williamson's Deposition testimony is Exhibit R to Defendant's Motion for Summary Judgment.  (Doc. 35-19.)

7;[4] Pl. Resp. Mot. Summ. J., Doc. 40 ("Pl. Resp.") at 7.)  Plaintiff does not contest this fact but suggests, without any factual support, that this endorsement was somehow fraudulent and that Yoro did not have the authority to transfer the legal interest in the Note.  (Pl. Resp. at 8-9.)

No party presented any facts tracking the ownership of the Note prior to the foreclosure sale planned for April 2011.

At some point, CHL Servicing became BAC Home Loan Servicing, L.P., and then on July 1, 2011, after the date of the scheduled foreclosure sale, BAC Home Loan Servicing, L.P. merged with and into BANA.  (Fishman Aff. ¶ 8.)  Jennifer Fishman, an Assistant Vice President of BANA, attests that the Note is still endorsed in BLANK and currently held by ReconTrust Company, N.A., as custodian for BANA.  (*Id.* ¶ 10; Note.)  Thus, according to Fishman, BANA is the current holder of the Note.

Nonetheless, Williamson continues to question whether BANA is currently the holder but admits that she has no proof to support her contention. (Williamson Dep. 19:20-20:9.)  Additionally, Williamson states that she has not sent payments to any other entity besides CHL and BANA.  (Williamson Dep. 20:24-21:15.)

---

[4] Jennifer Fishman is an Assistant Vice President of BANA.  (Fishman Aff. ¶ 1.)  Her affidavit is Exhibit A to Defendant's Motion for Summary Judgment.  (Doc. 35-2.)

### 2.    *The Security Deed*

About one week after the loan execution, on October 8, 1998, CHL recorded the Security Deed in the Clayton County Superior Court.  (Security Deed.)  Just as with the Note, the next incident in the record relating to the ownership of the Security Deed occurred in 2011.  On March 22, 2011, just over a week after Williamson filed suit in this case, CHL executed an Assignment of the Security Deed to BAC Home Loans Servicing, L.P., recorded in the Clayton County Register of Deeds on March 31, 2011.  (Def. Mot. Summ. J. Ex. D, Doc. 35-5 ("Assignment").)   The effective date of the Assignment purported to be December 25, 2010.  (*Id.*)  The Assignment is purportedly signed by two Assistant Vice Presidents of CHL and two unofficial witnesses.  (Assignment.)  Finally, as mentioned, on July 1, 2011, BAC Home Loans Servicing merged with BANA.  (Fishman Aff. ¶ 8.)   To the extent Williamson contests the validity of this assignment, she has produced no facts upon which to base this contention.  Fishman attests that BANA is now the holder of the Security Deed.  (Fishman Aff ¶ 11.)

### B.    **BANA's and Williamson's Conduct Regarding the Default**

In 2008, Williamson began having trouble meeting her monthly mortgage obligation because of a disabling injury.  (Williamson Dep. 22:6-22:19.)  In a May 19, 2008 letter, CHL notified Williamson that she was "in serious default because the required payments have not been made." (Def. Mot. Summ. J. Ex. E (Doc. 35-

6).)   CHL stated it may pursue all its rights and remedies under the loan if Williamson failed to pay the past due amount of $1,907.70 within 30 days.   (*Id.*) CHL sent Williamson a similar demand letter on July 3, 2008, this one seeking $2,701.83.   (Def. Mot. Summ. J. Ex. F (Doc. 35-7).)   Williamson does not remember receiving either of these letters.   (Williamson Dep. 24:1—25:21.)

Williamson testified that, in light of her disability, CHL agreed to a loan forbearance sometime in 2008.   (Williamson Dep. 22:20-23:17.)   This 2008 forbearance was in place until CHL granted her a loan modification in February 2009.   (Williamson Dep. 25:22—25:1.)   In a February 11, 2009 letter, CHL states, "We are pleased to advise you that your loan modification has been approved." (Williamson Dep. Ex. H; *see also* Williamson Dep. 26:20—27:9.)   According to the letter, Williamson would receive a loan modification with new total payments of $771.92, so long as she returned certain enclosed documents including a "Loan Modification Agreement" no later than March 11, 2009.   (Williamson Dep. Ex. H.)   Williamson signed the Loan Modification Agreement and dated it March 10, 2009.   (*Id.*)   She then testified that she returned the necessary documents, including the Loan Modification Agreement, by March 11, 2009 and spoke to an employee at Countrywide who confirmed its timely receipt.   (Williamson Dep. 27:12-21.)   She cannot remember receiving anything in writing from BANA that acknowledges receipt of these documents and was unable to produce a countersigned version of the agreement.   (Williamson Dep. 27:22-29:13.)

Nonetheless, Williamson testified that she had several subsequent conversations with a representative of BANA who confirmed that she had received the modification.  (Williamson Dep. 29:24-30:20.)

According to Williamson, she then made several payments under the modified terms in March, April and May 2009.  (Williamson Dep. 31:13-32:14.)  In discovery, BANA requested documentary proof to support these payments, but Williamson was unable to provide it.  (Williamson Dep. 31:13-32:14.)  Williamson then states that in about April or May 2009 she began receiving letters from BANA about raising the amount due.  (Williamson Dep. 31:21-24.)  She testified that, at some point, her "payments began to be reversed back to [her]." (Williamson Dep. 33:22-34:6.)

On May 14, 2009, Williamson received "Notice of Intent to Accelerate" from BANA.   (Def. Mot. Summ. J. Ex. G; Williamson Dep. 39:19-40:15.) According to this notice, Williamson's loan was again "in serious default" and she owed $11,155.37.  (Def. Mot. Summ. J. Ex. G.)  The notice explained that to cure the default and thus ward off an acceleration of the full amount remaining on the loan, she would have to pay the amount owed by June 13, 2009.   (*Id.*)

Williamson again applied for a loan modification, this time through the federal Home Affordable Modification Plan ("HAMP").  (Williamson Dep. 41:16-20.)  In response, in July 2009, BANA offered Williamson a Home Affordable Modification Trial Period Plan ("HAMP Trial Period"), which called for three

monthly trial period payments of $1,114.16.   (Def. Mot. Summ. J. Ex. H; Williamson Dep. 40:23-41:10.)  Williamson signed the HAMP agreement on July 24, 2009, and forwarded it to BANA.  (Def. Mot. Summ. J. Ex. H, Williamson Dep. 40:23-41:10.)

Subsequently, in a November 13, 2009 correspondence, BANA acknowledged that Williamson made all of the required HAMP payments but had failed to provide all the necessary documentation to support a permanent loan modification.  (Def. Mot. Summ. J. Ex. I.)  Despite this deficiency, BANA offered her a "one-time trial period extension through December 31, 2009."  (*Id.*)  To be eligible for the permanent loan modification, Williamson still needed to provide her most recent tax returns and all applicable income documentation and continue to pay her trial payments.  (*Id.*)

It appears that Williamson may have provided BANA with some of the required documentation.  (*See* Def. Mot. Summ. J. Ex. J.)  However, in a November 30, 2009 letter, BANA notified Williamson that it was still missing a few required documents to complete the trial modification.  (Def. Mot. Summ. J. Ex. J (Doc. 35-11).)  And again in December, BANA sent Williamson a letter requesting the necessary documentation to complete the loan modification.  (Def. Mot. Summ. J. Ex. L.)  Finally, on January 29, 2010, BANA sent Williamson a final notification about the document deficiency, requesting her most recent tax

returns.  (Def. Mot. Summ. J. Ex. M.)  Williamson denies receiving any of these letters.  (Williamson Dep. 47:4-21.)

On May 14, 2010, BANA contends that it sent Williamson a HAMP denial letter, stating the denial was the result of Williamson not making all of the required "Trial Period Plan" payments by the end of the trial period.  (Def. Mot. Summ. J. Ex. N.)  Williamson again denies receiving this correspondence. (Williamson Dep. 47:4-21.)  However, she admits that the HAMP trial period that BANA offered her did not result in a permanent loan modification.  (*Id.* 47:18-21.)  And according to Williamson, she first learned that she had not received the original loan modification from CHL in July 2010.  (Williamson Dep. 33:3-33:16.)  This is when she made her last payment on her mortgage, although this last payment was only partial.  (Williamson Dep. 33:20-35:23.)  She has not made any payments since.  (*Id.*)

By December 2010, Williamson was seriously behind in her mortgage payments.  BANA sent Williamson another "Notice of Intent to Accelerate," this time reflecting an outstanding balance of $9,642.80 for 2009, $8,848.53 for 2010, and various other fees for a total due of $19,867.70.  (Def. Mot. Summ. J. Ex. K.)  Williamson does not remember receiving this letter.  (Williamson Dep. 64:9-12.)  Williamson did not bring her debt current.

Finally, Williamson received a letter dated February 16, 2011 from McCalla Raymer, LLC.  (Williamson Dep. 62:21-63:1; Def. Mot. Summ. J. Ex. O.)  The

subject line of the letter read, "NOTICE OF FORECLOSURE SALE – Note and Security Deed – BAC Home Loan Servicing, L.P. FKA Countrywide Home Loan Servicing, LP vs. Delicia T[.] Williamson. (Def. Mot. Summ. J. Ex. O.) The letter informed her that her property was scheduled for public foreclosure sale on the first Tuesday in April 2011, at the Clayton County Courthouse. (*Id.*) The letter also identified "Bank of America" as the secured creditor and stated that Bank of America had the full authority to discuss, negotiate, or change all terms of the mortgage. (Def. Mot. Summ. J. Ex. O; Williamson Dep. 62:21-63:1.)

BANA published a foreclosure notice ("Foreclosure Notice") in the Clayton News Daily on March 11, 18, and 25 and April 1, 2011. (Def. Mot. Summ. J. Ex. P.) The Foreclosure Notice stated that Williamson's debt was "hereby declared due because of, among other possible events of default, failure to pay the indebtedness as and when due and in the manner provided in the Note and Security Deed." (*Id.*) The Foreclosure Notice identified BAC Home Loan Servicing, L.P. f/k/a Countrywide Home Loan Servicing, LP as the entity initiating the foreclosure, but stated that "Bank of America was the entity with "full authority to negotiate, amend, and modify all terms of the mortgage." (*Id.*) According to Williamson's deposition testimony, this last statement was the only untrue statement in the Foreclosure Notice. (Williamson Dep. 70:19-71:25.)

Williamson claims that the published Foreclosure Notice caused her certain injuries including a reduction in the value of her property. (Williamson

Dep. 48:8-54:23.)   However, Williamson has produced no evidence, such as appraisals or broker price opinions, to support her assertion that the value of her property has plummeted.   (Williamson Dep. 48:8-54:23.)  Likewise, Williamson produced no evidence that her credit score has declined or that she has been denied credit as a result of the Foreclosure Notice.   (*Id.* 55:4-22.)   Finally, Williamson testified that she has not suffered any financial damages because of the publication.  (Williamson Dep. 56:16-57:13.)

As of the date of her deposition, and assuming Ms. Williamson had actually received the loan modification she purports to have received, she was behind in her payments by $15,438.40.  (Williamson Dep. 34:9-35:23.)  Williamson states that she would be willing to tender the $15,438.40 if it were necessary, but was not sure where she would obtain the necessary funds.  (Williamson Dep. 37:4-35:23, 38:3-39:1; DSUF ¶ 9; Fishman Aff. ¶ 14.)

## IV.  ANALYSIS

BANA and Williamson both move for summary judgment on Williamson's two remaining claims: wrongful attempted foreclosure and injunctive relief to prevent a wrongful foreclosure.

### A.    Wrongful Attempted Foreclosure

Georgia courts have recognized a claim for damages based on wrongful *attempted* foreclosure when a foreclosure action was commenced but not completed, where plaintiffs have shown that the defendant "knowingly published

an untrue and derogatory statement concerning the plaintiffs' financial conditions and that damages were sustained as a direct result of this publication." *Sale City Peanut & Milling Co. v. Planters & Citizens Bank*, 130 S.E.2d 518, 520 (Ga. Ct. App. 1963); *accord Aetna Fin. Co. v Culpepper*, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984); *Mayrant v. Deutsche Bank Trust Co. Ams.*, No 1:10-CV-3094-TWT, 2011 WL 1897674 (N.D. Ga. May 17, 2011).   A wrongful publication stating that plaintiff has defaulted on a loan when she has not may constitute an untrue and derogatory statement concerning the plaintiff's financial condition. *See Hauf v. HomEq Servicing Corp.*, No. 4:05-CV-109, 2007 WL 486699, at *6 (M.D. Ga. Feb. 9, 2007).

Williamson's claim of wrongful attempted foreclosure fails on summary judgment for two reasons.   First, Williamson has produced no evidence that BANA "knowingly published an untrue and derogatory statement concerning [her] financial condition[]." *Sale City Peanut*, 130 S.E.2d at 520.   Williamson asserts that the Foreclosure Notice here wrongfully identified "Bank of America" as the entity with full authority to negotiate, amend or modify the terms of her mortgage. (Williamson Dep. 71:16-19.)   Even if this were so, however, an inaccurate identification of the secured creditor on a foreclosure notice is not an untrue or derogatory statement about Williamson's *financial status*, and thus cannot support a claim for wrongful attempted foreclosure. *See Sellers v. Bank of Am., Nat. Ass'n*, No. 1:11-CV-3955-RWS, 2012 WL 1853005, at *3 (N.D. Ga.

15

May 21, 2012) (dismissing plaintiff's wrongful foreclosure claim premised on defendant's alleged lack of authority to foreclose).

Williamson also appears to argue that the Foreclosure Notice wrongly stated that she was in default on her loan.  Williamson admits that she stopped making mortgage payments in July of 2010, and that this was only a partial payment.  (Williamson Dep. 33:20-35:23.) Thus, by the time of the Foreclosure Notice eight months later, she was in default.  Williamson does not dispute this, but rather argues that this default was the inevitable result of BANA's unfair handling of her loan modification.  (*See* Pl. Resp. Mot. Summ. J. at 18-19, 44.) For this assertion to support a wrongful attempted foreclosure claim, however, Williamson would have to produce some evidence that BANA published the foreclosure notice knowing that the default was erroneous, and not truly a result of Williamson's actual default.  *See Mayrant*, 2011 WL 1897674, at *2.

In *Mayrant,* the plaintiff asserted a wrongful attempted foreclosure claim premised on a foreclosure notice that stated he was in default on his loan.  He admitted he was in default, but argued that the "[d]efendants did not deal fairly with [him] relating to any foreclosure and refused to honor the contractual modification that was agreed to between the parties."  *Id.* at *2.  The Court rejected the plaintiff's argument factually, noting that the defendant had given the plaintiff multiple opportunities to modify the loan or bring the debt current. *Id.* As defendant's conduct was not unfair, and plaintiff was actually in default at

the time of the Foreclosure Notice, the Court granted summary judgment to defendant. *Id.*

Likewise, here Williamson's default was not a result of BANA's mishandling of her loan modification.  The evidence viewed in a light most favorable to Williamson indicate that CHL and BANA thoroughly bungled her initial loan modification in early 2009.  Williamson signed a Loan Modification Agreement with CHL but CHL or BANA refused to acknowledge it.  And by May of 2009, BANA threatened to accelerate the full amount of the loan if she did not bring her debt current.  In addition, at some point, BANA refused to accept Williamson's payments.

However, subsequent to this conduct, BANA offered Williamson a second chance at a loan modification, this time under the HAMP program, and Williamson produced no evidence that BANA acted unfairly then.  BANA placed Williamson on a HAMP Trial Period that called for three monthly trial payments of $1,114.16 and several documents regarding Williamson's financial status.  Williamson signed the HAMP agreement in July of 2009.  BANA then sent Williamson several notices regarding her failure to comply with the terms of the trial period.  Although Williamson denies receiving these, she admits that the trial period did not mature into a permanent loan modification.  She has failed to produce evidence to suggest that BANA's conduct regarding this second offer for a loan modification was unfair and led to her default.  Instead, the undisputed

facts show that Williamson defaulted on her loan because she stopped making payments.  (Williamson Dep. 33:20-35:23.)  As she was in default on her Note at the time of the foreclosure publication, and this default was not the result of BANA's unfair conduct, she cannot support her claim that BANA "knowingly published an untrue and derogatory statement concerning [her] financial conditions.  *Sale City Peanut*, 130 S.E.2d at 520.

Second, there is no evidence that Williamson incurred damage as a result of the publication.  Williamson testified that she has not suffered any financial damage as a direct result of the publication, other than depreciation of the value of her home.  In addition, Williamson failed to produce any evidence, such as appraisals or broker price opinions, supporting her contention that her home value actually depreciated, and no evidence that depreciation was a direct result of the Foreclosure Notice.  Likewise, Williamson produced no evidence that her credit score has declined or that she has been denied credit as a result of the Foreclosure Notice.  As Williamson can point to no damages occurring "as a direct result" of the publication, her wrongful attempted foreclosure claim must be dismissed.[5]

---

[5] Williamson suggests that she has experienced emotional damages.  To recover for emotional damages under a theory of wrongful foreclosure, the plaintiff must establish a claim for intentional infliction of emotional distress.  *McCarter v. Bankers Trust Co.*, 543 S.E.2d 755, 758 (Ga. Ct. App. 2000); *Hauf*, 2007 WL 486699, at *7.  "[T]he burden that plaintiff must meet is a stringent one in order to prevail." *McCarter*, 543 S.E.2d at 758 (citing *Clark v. West*, 395 S.E.2d 884 (Ga. Ct. App. 1990)).  As the Court finds no evidence of *intentional* publication of an untrue or derogatory statement, Williamson is not entitled to emotional damages.

### B.    Injunctive Relief

Williamson's claim for injunctive relief must likewise be dismissed. Williamson presents two arguments to support her request for injunctive relief: (1) BANA lacks the authority to foreclose and (2)  BANA failed to exercise its power of sale in good faith.  The Court considers each argument in turn.

#### 1.    BANA's Present Authority to Foreclose

A court may enjoin a nonjudicial foreclosure sale where the authority to foreclose is in question.  *See, e.g.*, *Atlanta Dwellings, Inc. v. Wright*, 527 S.E.2d 854, 856 (Ga. 2000); *West v. Koufman*, 384 S.E.2d 664, 665 (Ga. 1989) (recognizing the propriety of granting an interlocutory injunction preventing foreclosure premised on a breach of the duty of good faith and fair dealing); *Cotton v. First Nat'l Bank of Gwinnett Co.*, 220 S.E.2d 132 (Ga. 1975).

Generally, only the holder of the promissory note and the security deed has the authority to foreclose on real property.  *See Bowen v. Tucker Fed. Sav. & Loan Assoc.*, 438 S.E.2d 121, 122 (Ga. Ct. App. 1993) ("[T]he holder of a note who is also the grantee of a security deed has the right to exercise the power of sale in the security deed upon default."); *Cummings v. Anderson*, 173 B.R. 959, 963 (Bankr. N.D. Ga. 1994) (finding that a foreclosure was null and void where the entity foreclosing did not have an actual assignment of the note and security deed), *aff'd*, 112 F.3d 1172 (11th Cir. 1997) (Table).

19

However, where the promissory note and security deed are split, a question arises as to who has the power to foreclose.  This Court has previously held that, only the holder of the note is the secured creditor, and thus only it has the authority to exercise a power of sale.  *Morgan v. Ocwen Loan Servicing, LLC*, 795 F. Supp. 2d 1370, 1376-77 (N.D. Ga. 2011) (citing *Weems v. Coker*, 70 Ga. 746, 749 (1883); *Boaz v. Latson*, 580 S.E.2d 572, 578 (Ga. Ct. App. 2003), *rev'd on other grounds*, 598 S.E.2d 485, 487 (Ga. 2004); *Bowen*, 438 S.E.2d at 122).  Other courts in this district have held that the holder of the security deed, although not also the holder of the note, may have the authority to foreclose.  *See, e.g.*, *LaCosta v. McCalla Raymer, LLC*, No. 1:10-CV-1171-RWS, 2011 WL 166902, at \*3-6 (N.D. Ga. 2011) (Story, J.); *Kabir v. Statebridge Co., LLC*, No. 1:11-cv-2747-WSD, 2011 WL 4500050, at \*5 (N.D. Ga. 2011) (Duffey, J.).  This split of opinion prompted Chief Judge Carnes of the Northern District of Georgia to certify a question to the Georgia Supreme Court.  *You, et al. v. JPMorgan Chase Bank, N.A., et al.*, 1:12-cv-0202-JEC-AJB (N.D. Ga. Sept. 7, 2012).

The resolution of this question is immaterial to the instant case, however. Here, although there is a significant question as to whether BANA held the Note or Security Deed at the time of the foreclosure, BANA has produced uncontroverted evidence that it now holds both.

First, BANA has produced uncontroverted evidence that it is now the holder of the Note.  A promissory note secured by a security deed on real

property is a negotiable instrument governed by Article 3 of Georgia's Commercial Code. *See* O.C.G.A. § 11-3-104(a) (defining negotiable instrument); O.C.G.A. § 11-3-102.[6]  Pursuant to O.C.G.A. § 11-3-301, the "holder of the instrument" is entitled to enforce it.  If the instrument is endorsed in blank, then the person who possesses it is the holder.  *See* O.C.G.A. § 11-3-205 ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."); O.C.G.A. § 11-1-201(20) (defining "holder" as, among other things, the "person in possession of a negotiable instrument that is payable . . . to bearer").

CHL was the original holder of the Note.  CHL's Assistant Secretary Nora Yoro assigned the Note in "BLANK" and physically delivered the Note to CHL Servicing.  Although Plaintiff contests the validity of this assignment in blank, she provides no evidence to support her contention.  At some point, CHL Servicing became BAC Home Loan Servicing, L.P. and then on July 1, 2011, BAC Home Loan Servicing, L.P. merged with and into BANA.  Jennifer Fishman, an Assistant

---

[6] Georgia law defines a "negotiable instrument" as

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) Is payable on demand or at a definite time; and
>
> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . .

O.C.G.A. § 11-3-104.

Vice President of BANA, attests that the Note is still endorsed in BLANK and currently held by ReconTrust Company, N.A. as custodian for BANA.  Williamson has produced no evidence to challenge this testimony and admits that she has no proof to support her contention that BANA is not now the holder of the Note.[7] Thus, for purposes of summary judgment, BANA is the current Note holder.

Second, BANA has produced uncontroverted evidence that it is also now the holder of the Security Deed.  An owner of a deed to secure debt may transfer all its interests in the deed by signing a written document that is witnessed as required for deeds.  O.C.G.A. § 44-14-64(a).  If the transfer is executed and recorded by the holder of record of the security deed, it "shall be effective to transfer . . . all interest of the holder of record of the deed to secure debt and all interest of all transferees claiming by, through, or under the holder of record of the deed to secure debt."  O.C.G.A. § 44-14-64.  Under the version of O.C.G.A. § 14-5-7(b) in force at the time of the March 2011 Assignment, "[i]nstruments executed by a corporation releasing a security agreement, when signed by one officer of the corporation . . .  without the necessity of the corporation's seal being attached, shall be conclusive evidence that said officer signing is duly authorized to execute and deliver the same."  O.C.G.A. § 14-5-7(b)(2011);[8] *see Deutsche Bank*

---

[7] Williamson asserts without any evidence that the merger did not result in a conveyance of any interests in the Note or Security Deed.  (Pl. Resp. Mot. Summ. J. at 9, 15.)

[8] O.C.G.A. § 14-5-7(b) was amended, effective July 1, 2011 to specify that only the president's, vice-president's, secretary's, or assistant secretary's signatures are to be treated as conclusive

*Nat. Trust Co. v. JP Morgan Chase Bank, N.A.*, 704 S.E.2d 823, 827-28 (Ga. Ct. App. 2010) (recognizing that a warranty deed executed by an assistant vice president facially complied with O.C.G.A. § 14-5-7(b) and as recorded, served as conclusive evidence that the execution of the deed had been authorized by the grantor).

CHL, the original holder of the Security Deed, assigned its interest in the Security Deed to BAC Home Loan Servicing, L.P. on March 22, 2011, and recorded this assignment on March 31, 2011.  The Assignment is signed by two assistant vice-presidents, two official witnesses, and a notary public, thus establishing conclusive evidence that the signatories were duly authorized to execute the Security Deed.  On July 1, 2011, BAC Home Loan Servicing merged with and into BANA.   Thus, according BANA's Vice President Jennifer Fishman, BANA became the holder of the Security Deed as successor by merger to BAC Home Loan Servicing.  (*See* Fishman Aff. ¶¶ 8, 11.)

Williamson questions the validity of the assignment and challenges whether the merger resulted in an actual transfer of interests.  (Pl. Resp. Mot. Summ. J. at 9, 15, 41.)   However, Williamson has produced no evidence to support these challenges.  Thus, the Court has no basis to question the validity of the Assignment or Ms. Fishman's testimony that, as a result of the merger, BANA

---

evidence that the execution of the instrument has been duly authorized.  2011 Ga. Laws 105 § 5, eff. July 1, 2011.

became the holder of the Security Deed.  Williamson has failed to meet her burden of producing sufficient evidence for a reasonable jury to conclude that BANA is not now the holder of the Security Deed.

As Williamson has produced no evidence supporting her assertion that BANA lacks the present authority to foreclose, the Court cannot enjoin the foreclosure on this basis.

### 2.    *BANA's Conduct Regarding the Default*

Likewise, Williamson cannot seek an injunction based on her allegations that BANA acted unfairly in the handling of her loan modification.  Georgia law requires that a creditor seeking to foreclose on property exercise the power of sale fairly.  O.C.G.A. § 23-2-114.  A plaintiff may therefore state a claim for wrongful foreclosure where the defendant knew the note was not actually in default and thus it had no right to foreclose as this would be a violation of the defendant's duty to exercise the power of sale fairly.  *Clark v. West*, 395 S.E.2d 884, 885 (Ga. Ct. App. 1990); *First Nat'l Bank v. Loggins*, 429 S.E.2d 278, 278 (Ga. Ct. App. 1993) (overturning summary judgment where an issue of fact existed as to whether homeowner was actually in default at the time the property was foreclosed upon).

Williamson alleges that BANA's conduct surrounding her attempts at a loan modification constituted a breach of its duty to exercise the power of sale fairly, warranting injunctive relief.  As the Court has previously noted, however,

BANA's conduct regarding Williamson's default was not unfair.  (*See supra* Part A).  The evidence viewed in a light most favorable to Williamson shows that after seriously mishandling her loan modification in early 2009, BANA provided Williamson with a subsequent opportunity under the HAMP program. Williamson produced no evidence to suggest that BANA mishandled *this* loan modification.  According to BANA, it gave Williamson multiple opportunities to comply with the HAMP trial period requirements.  Williamson denies receiving correspondence regarding these offers, but does not deny that she entered into the trial period and that it did not result in a permanent loan modification.  Thus, the evidence before the Court is insufficient for a reasonable jury to conclude that BANA's conduct was unfair and led to Williamson's default.  *See Clark*, 395 S.E.2d at 885 (finding that a foreclosure was wrongful where the creditor knew the note was not in default and it had no right to foreclose); *First Nat'l Bank of Gainesville v. Loggins*, 429 S.E.2d 278, 278 (Ga. Ct. App. 1993) (overturning summary judgment where issue of fact existed as to whether homeowner was actually in default at the time the property was foreclosed upon).  At this point, there is no question that Williamson is currently in default on her Note due to her failure to pay her mortgage payments.  Thus, Williamson cannot seek an injunction based on BANA's loan modification conduct.

## V.     CONCLUSION

The Court has little doubt that Defendant Bank of America, N.A. and its predecessor, Countrywide Home Loans, thoroughly mishandled Plaintiff Delicia Williamson's initial request for a home loan modification.    However, the undisputed facts show that BANA provided Williamson with a subsequent opportunity for a home loan modification, and there is no evidence to support a finding that BANA acted unfairly during this time.    In addition, although it appears that BANA may not have had the legal authority to foreclose in when it attempted to do so in March 2011, there is no evidence questioning that BANA is now the holder of the Note and Security Deed. The Court is aware of how serious and devastating it is for any person to face the loss of a home to foreclosure. However, based on the evidence before the Court, no genuine dispute of material fact exists to allow Williamson's claims against BANA to go forward to trial. Therefore, the Court **GRANTS** Defendant Bank of America, N.A.'s Motion for Summary Judgment [Doc. 35] and **DENIES** Williamson's Motion for Summary Judgment [Doc. 42].    In order to foreclose on Williamson's property, however, BANA must comply with all requirements under Georgia law.

The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED** this 8th day of March, 2013.

AMY TOTENBERG
UNITED STATES DISTRICT JUDGE